Mail to:

DELTA FUNDING CORPORATION
1000 WOODBURY ROAD
Woodbury, NY  11797
Parcel #:
Title Insurer:

███████████████████  Space Above This Line for Recording Information_____

# MORTGAGE

## WORDS USED OFTEN IN THIS DOCUMENT

(A) "Security Instrument." This Mortgage, which is Dated May 9, 2002          will be called the "Security Agreement."

(B) "Borrower(s)." ANTHONY LYNCH

residing at 2710 NORTH 23RD STREET, Philadelphia,  PA  19132     sometimes will be called Borrower, and sometimes simply "I" or "me."

(C) "Lender." DELTA FUNDING CORPORATION          will be called "Lender."
Lender is a corporation which exists under the laws of the State of New York
Lender's address is: 1000 WOODBURY ROAD
          Woodbury, NY  11797

(D) "Note." The Note signed by Borrower and dated    May 9, 2002          will be called the "Note." The Note shows that I owe Lender Twenty Five Thousand Eight Hundred Seventy Five and No/100
($   25,875.00          ) plus interest. I have promised to pay this debt in monthly payments and to pay the debt in full by  June 1, 2032              .

(E) "Property." The property that is described below in the section titled "Description of the Property" will be called the Property, which is located in     Philadelphia          COUNTY, PENNSYLVANIA.

(F) "Sums secured," the amounts described below in the section titled Borrower's Transfer to Lender of Rights in the Property sometimes will be called the "sums secured."

## BORROWER'S TRANSFER TO LENDER OF RIGHTS IN THE PROPERTY

I mortgage, grant and convey the Property described below to Lender, subject to the terms of this Security Instrument. This Security Instrument secures to Lender those rights that are stated in this Security Instrument, and also those rights that the law gives to lenders who hold mortgages on real property. I am giving Lender these rights to protect Lender from possible losses that might result if I fail to:

(A) Pay all the amounts that I owe Lender as stated in the Note, with interest, and all renewals, extensions and modifications to the Note;

(B) Pay, with interest, any amounts that Lender spends under Paragraphs 2 and 7 of this Security Instrument to protect the value of the Property and Lender's rights in the Property; and

(C) Keep all of my other promises and agreements under this Security Instrument, and the Note.

## DESCRIPTION OF THE PROPERTY

I give Lender rights in the Property described in (A) through (J) below:

(A) The Property located at  2710 NORTH 23RD STREET, Philadelphia, PA  19132
Address # 2:
Address # 3:
. The legal description of the Property is more fully described in the Schedule "A" Legal Description attached hereto and made a part hereof;

(B) All buildings and other improvements that are located on the Property described in subparagraph (A) of this section;

50460069
Page: 2 of 16
05/17/2002 02:26P

2 of 16

Doc #20509 - PAMT1

ALL THAT CERTAIN LOT OR PIECE OF GROUND WITH THE TWO STORY BRICK MESSUAGE OR TENEMENT THEREON ERECTED DESCRIBED ACCORDING TO A SURVEY THEREOF MADE BY H.M. FULLER, ESQ., SUVEYOR AND REGULATOR OF THE THIRTEENTH DISTRICT ON THE SIXTH DAY OF DECEMBER A.D., 1909 AS FOLLOWS TO WIT:
SITUATE ON THE WEST SIDE OF THE THIRTY-THIRD STREET AT THE DISTANCE OF SEVENTY-NINE FEET NORTHWARD FROM THE NORTH SIDE OF LEHIGH AVENUE IN THE 11TH ( FORMERLY THE THIRTY-EIGHTH ) WARD OF THE CITY OF PHILADELPHIA.
CONTAINING IN FRONT OR BREADTH ON THE SAID TWENTY-THIRD STREET FIFTEEN FEET AND EXTENDING OF THAT WIDTH IN LENGTH OR DEPTH WESTWARD BETWEEN PARALLEL LINES AT RIGHT ANGLES TO SAID TWENTY-THIRD STREET AND EXTENDING ALONG THE NORTH SIDE OF A CERTAIN THREE FEET WIDE ALLEY EXTENDING FROM TWENTY-THIRD STREET TO BONSALL STREET SIXTY FEET SEVEN AND ONE-HALF INCHES TO A CERTAIN OTHER THREE FEET WID ALLEY LEADING SOUTHWARD INTO THE FIRST ABOUVE MENTIONED THREE FEET WIDE ALLEY.
BEING NO. 2710 N. 23RD STREETTOGETHER WITH THE FREE AND COMMON USE, RIGHT, LIBERTY AND PRIVILEGE OF THE AFORESAID ALLEYS AS AND FOR PASSAGEWAYS AND WATERCOURSES AT ALL TIMES HEREAFTER, FOREVER.

50460069
Page: 3 of 16
05/12/2002 02:26P

3 of 16

(C) All rights in other property that I have as owner of the Property described in subparagraph (A) of this section.  These rights are known as "easements, rights and appurtenances attached to the Property;"

(D) All rents or royalties from the Property described in subparagraph (A) of this section;

(E) All mineral, oil and gas rights and profits, water rights and stock that are part of the Property described in subparagraph (A) of this section;

(F) All rights that I have in the land which lies in the streets or roads in front of or next to, the Property described in subparagraph (A) of this section;

(G) All fixtures that are now or in the future will be on the Property described in subparagraphs (A) and (B) of this section; along with but not limited to stoves, refrigerators, washers, dryers, dishwashers, ovens, air conditioning units;

(H) All of the rights and property described in subparagraphs (B) through (G) of this section that I acquire in the future;

(I) All replacements of, or additions to, the Property described in subparagraphs (B) through (H) of this section; and

(J) All of the amounts that I pay to Lender under Paragraph 2 below.

### BORROWER'S RIGHT TO MORTGAGE THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY

I promise that: (A) I lawfully own the Property; (B) I have the right to mortgage, grant and convey the Property to Lender; and (C) there are no outstanding claims or charges against the Property.

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

### PLAIN LANGUAGE SECURITY INSTRUMENT

This Security Instrument contains uniform promises and agreements that are used in real property security agreements all over the country.  It contains non-uniform promises and agreements that vary to a limited extent, in different parts of the country. My promises and agreements are stated in "plain language."

I promise and I agree with Lender as follows:

### 1. BORROWER'S PROMISE TO PAY

I will pay to Lender, on time, principal and interest due under the Note and any prepayment and late charges due under the Note.

### 2. MONTHLY PAYMENTS FOR TAXES & INSURANCE

#### A) Borrower's Obligations

I will pay to Lender all amounts necessary to pay for taxes, assessments, leasehold payments or ground rents (if any), and hazard insurance on the property and mortgage insurance (if any).  I will pay those amount to Lender unless Lender tells me, in writing, that I do not have to do so, or unless the law requires otherwise. I will make those payments on the same day that my monthly payments of principal and interest are due under the Note.

50468069
Page: 4 of 16
05/17/2002 02:26P

4 of 16

Each of my payments under this Paragraph 2 will be the sum of the following:

(i) One-twelfth of the estimated yearly taxes and assessments on the Property which under the law may be superior to this Security Instrument; plus

(ii) One-twelfth of the estimated yearly leasehold payments or ground rents on the Property, if any; plus

(iii) One-twelfth of the estimated yearly premium for hazard insurance covering the Property (if required); plus

(iv) One-twelfth of the estimated yearly premium for mortgage insurance (if any); plus

(v) One-twelfth of the estimated yearly premium for flood insurance (if required).

In accordance with applicable law, Lender will estimate from time to time my yearly taxes, assessments, leasehold payments or ground rents and insurance premiums. Lender will use existing assessments and bills and reasonable estimates of future assessments and bills.  Lender may, at any time, collect and hold items under Paragraph 2 in an aggregate amount not to exceed the maximum amount that may be required for Borrower's account under the Real Estate Settlement Procedures Act of 1974, 12 USC 2601 et seq., and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time. ("RESPA"), except that I will pay to Lender an additional sum equal to one-sixth of the aggregate amount of yearly payments under this paragraph 2 or a lesser amount if required by applicable law. This sum is known as the "reserve" or "cushion," and is permitted by RESPA for unanticipated disbursements or disbursements before my payments are available in the account. These amounts that I pay to Lender for these items under Paragraph 2 will be called the "Funds." These Funds may be commingled with the funds of the Lender unless the law requires otherwise.  Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with the loan, unless applicable law provides otherwise.

**B) Lender's Obligations**

Lender will use the Funds to pay the above listed items. Lender will give to me, without charge, an annual accounting of the Funds. That accounting must show all additions to and deductions from the Funds and the reason for each deduction.

**C) Adjustments**

If Lender's estimates are too high or if taxes and insurance rates go down, the amounts that I pay under this Paragraph 2 will be too large. If this happens at a time when I am keeping all of my promises and agreements made in this Security Instrument, I will have the right to have the excess amount either promptly repaid to me as a direct refund or credited to my future monthly payments of funds. There will be excess amounts if, at any time, the sum of (i) the amount of funds which Lender is holding or keeping, plus (ii) the amount of the monthly payments of funds which I still must pay between that time and the due dates of these items is greater than the amount necessary to pay the above listed items when they are due.   If the Funds exceed the amounts permitted to be held by RESPA, Lender shall deal with excess funds as required by RESPA.

If, when payments of these items are due, Lender has not received enough Funds to make those payments, I will pay to Lender whatever additional amount is necessary to pay the these items in full. I must pay  that additional amount in one or more payments as Lender may require, and permitted by RESPA

**3. APPLICATION OF BORROWER'S PAYMENTS**

Unless the law requires otherwise, Lender will apply each of my payments under the Note and under Paragraphs 1 and 2 above in the following order and for the following purposes:

First, to pay any prepayment charges due under the Note; Next, to pay late charges under the Note; Next, to pay any  amounts due to Lender under Paragraph 2 above or other advances; Next to pay interest due; and Last to pay principal due.



50460069
Page: 5 of 16
05/17/2002 02:26P

5 of 16

Doc #20511 - PAMT3

**4. BORROWERS'S OBLIGATION TO PAY CHARGES, ASSESSMENTS AND CLAIMS**

I will pay all taxes, assessments, charges, fines and impositions attributable to the Property and that may be superior to this Security Agreement. I will also make payments due under any lease if I am a tenant on the Property and I will pay ground rents (if any) due on the Property. I will do this either by making the payments to Lender that are described in Paragraph 2 above or, if I am not required to make payments under Paragraph 2, by making the payments on time to time to the person owed them (In this Security Instrument, the word "person" means any person, organization, governmental authority or other party.) If I make direct payments, then promptly after making any of those payments, I will give Lender a receipt which shows that I have done so.   If I make payments to Lender under Paragraph 2,  l will give Lender all notices or bills that I receive for the amounts due under this Paragraph 4.

Any claim, demand or charge that is made against the Property because an obligation has not been fulfilled is known as a "lien." I will promptly pay or satisfy all liens against the Property that may be superior to this Security Instrument. However, this Security Instrument does not require me to satisfy a superior lien if: (A) I agree, in writing to pay the obligation which gave rise to the superior lien, and Lender approves the way in which I agree to pay that obligation; or (B) in good faith,  I argue or defend against the superior lien in a lawsuit so that during the lawsuit the superior lien may not be enforced and no part of the Property must be given up; or (C) I secure from the holder of that other lien an agreement approved in writing by Lender that the lien of this Security Instrument is superior to the lien held by that person. If Lender determines that any part of the Property is subject to a superior lien, Lender may give Borrower a notice identifying the superior lien. Borrower shall pay or satisfy the superior lien or take one or more of the actions set forth above within 10 days from the giving of notice.

**5. BORROWER'S OBLIGATION TO MAINTAIN HAZARD INSURANCE**

I will obtain hazard insurance to cover all buildings and other improvements that are now,  or in the future, will be located on the Property. The insurance must cover loss or damage caused by fire hazards normally covered by "extended coverage" hazard insurance policies, and other hazards, including floods or flooding, for which lender or state or federal government requires coverage. The insurance must be in the amounts and for the periods of time required by Lender or government agency.  I may choose the insurance company, but my choice is subject to Lender's approval. Lender may not refuse to approve my choice unless the refusal is reasonable.  If I do not maintain coverage as described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in accordance with this paragraph and paragraph 7.  If the property is determined to be located in a flood zone that requires flood insurance, as designated by the Federal Emergency Management Agency or another agency that has the authority to make such determination, I understand that I will be required to obtain flood insurance coverage for the property.

All of the insurance policies and renewals of those policies must include what is known as a "Standard Mortgagee" clause to protect Lender. The form of all policies and renewals must be acceptable to Lender. Lender will have the right to hold the policies and renewals. If Lender requires, I will promptly give Lender all receipts of paid premiums and renewal notices that I receive.

If there is a loss or damage to the Property, I will promptly notify the insurance company and Lender. If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so. The amount paid by the Insurance company is called "proceeds." I authorize the Lender to settle any claims and collect the proceeds on my behalf and use them to reduce the amount I owe to Lender under the Note and under this Security Instrument (whether or not repairs have been made by me), or Lender may release the proceeds to me for use in the repair or restoration of the damaged Property. Lender may use the proceeds to repair or restore the property or to pay the sums secured.

If any proceeds are used to replace the amount of principal which I owe to Lender under the Note, that use will not delay the due date or change the amount of any of my monthly payments under the Note and under Paragraphs 1 and 2 above. However, Lender and I may agree in writing to those delays or changes.

50460069
Page  6 of 16
05/17/2002  02:26P

ρ  of 16

If Lender acquires the Property under Paragraph 25 below, all of my rights in the insurance policies will belong to Lender. Also, all of my rights in any proceeds which are paid because of damage that occurred before the Property is acquired by Lender or sold will belong to Lender. However, Lender's rights in those proceeds will not be greater than the sums secured immediately before the Property is acquired by Lender or sold.

In the event that Borrower fails to maintain hazard insurance or flood insurance as outlined in this Paragraph 5, or has the policy cancelled, then and in that event, Lender may obtain the necessary insurance.   Lender may charge borrower a "surcharge" to cover the costs and administration of said insurance, and will be responsible for the payment of these fees and all premiums on said insurance. If the Lender obtains insurance, it will only provide protection for the premises. Contents, liability and other items will not be insured.

Borrower irrevocably assigns to lender all of my right, title and interest in any tax/insurance escrow refunds, insurance proceeds or the like regardless of how designated, which is/are in any way related to the subject property, and authorizes these amounts to be paid directly to Lender. Lender will credit all payments to the borrower(s) account in the order of priority, as specified in paragraph 3 hereof.

**6. BORROWER'S OBLIGATION TO MAINTAIN THE PROPERTY AND TO FULFILL ANY LEASE OBLIGATIONS**

I will keep the Property in good repair. I will not destroy, damage or substantially change the Property, and I will not allow the Property to deteriorate. If I do not own but am a tenant on the property, I will fulfill my obligations under any lease.  I also agree that, if I acquire the fee title to the Property, my lease interest and the fee title will not merge unless Lender agrees to the merger in writing.

**7. LENDER'S RIGHT TO PROTECT ITS RIGHTS IN THE PROPERTY: MORTGAGE INSURANCE**

If: (A) I do not keep my promises and agreements made in this Security Instrument, or (B) someone, including me, begins a legal proceeding that may affect Lender's rights under the Note or in the Property (such as a legal proceeding in bankruptcy, in probate, for condemnation or to enforce laws or regulations), Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Note and Property. Lender's actions may include appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this Paragraph 7, Lender does not have to do so.

I will pay to Lender any amount with Interest, which Lender spends under this Paragraph 7.  I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. I will also pay interest on those amounts at the Note rate. Interest on each amount will begin on the date that the amount is spent by Lender. However, Lender and I may agree in writing to terms of payment that are different from those in this paragraph. This Security Instrument will protect Lender in case I do not keep this promise to pay those amounts with interest.

If Lender required mortgage insurance as a condition of making the loan that I promise to pay under the Note, I will pay the premiums for that mortgage insurance. I will pay the premiums until the requirement for mortgage insurance ends according to my written agreement with Lender or according to law. Lender may require me to pay the premiums in the manner described in Paragraph 2 above.

**8. LENDER'S  RIGHT TO INSPECT THE PROPERTY**

Lender, and others authorized by Lender, may enter on and inspect the Property. They must do so in a reasonable manner and at reasonable times.

**9. AGREEMENTS ABOUT CONDEMNATION OF THE PROPERTY**

A taking of property by any governmental authority by eminent domain is known as "condemnation." I give to Lender my right: (A) to proceeds of all awards or claims for damages resulting from condemnation or other governmental taking of the property and (B) to proceeds from a sale of the Property that is made to avoid condemnation. All of those proceeds will be paid to Lender.

50460063
Page: 7 of 16
05/17/2002 02:26P

7 of 16

Doc #20513 - PAMT5

50460069
Page: 8 of 16
05/17/2002 02:26P

If all of the Property is taken, the proceeds will be used to reduce the sums secured.  If any of the proceeds remain after the amount that I owe to Lender has been paid in full, the remaining proceeds will be paid to me. Unless Lender and I agree otherwise in writing, if only a part of the Property is taken, the amount that I owe to Lender will be reduced only by the amount of proceeds multiplied by the following fraction: (A) the total amount of the sums secured immediately before the taking divided by (B) the fair market value of the Property immediately before the taking. The remainder of the proceeds will be paid to me.

If I abandon the Property, or if I do not answer, within 30 days, a notice from Lender stating that a governmental authority has offered to make a payment or to settle a claim for damages, Lender has the authority to collect the proceeds. Lender may then use the proceeds to repair or restore the Property or to reduce the sums secured. The 30 day period will begin when the notice is given.

If any proceeds are used to reduce the amount of principal which I owe the Lender under the Note, that use will not delay the due date or change the amount of any of my monthly payments under the Note and under Paragraphs 1 and 2 above. However, Lender and I may agree in writing to those delays or changes.

## 10. CONTINUATION OF BORROWER'S OBLIGATIONS AND OF LENDER'S RIGHTS

### (A) Borrower's Obligations

Lender may allow a person who takes over my rights and obligations to delay or to change the amount of the monthly payments of principal and interest due under the Note or under this Security Instrument. Even if Lender does this, however, that person and I will both still be fully obligated under the Note and under this Security Instrument. Lender may allow these delays or changes for a person who takes over my rights and obligations, even if Lender is requested not to do so. Lender will not be required to bring a lawsuit against such a person for not fulfilling the obligation of the Note or the Security Instrument.

### (B) Lender's Rights

Even if Lender does not exercise or enforce any right of Lender under this Security Instrument or under the law, Lender will still have all of those rights and may exercise and enforce them in the future.  Extension of time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest.  Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.   Even if Lender obtains insurance, pays taxes, or pays other claims, charges or liens against the Property, Lender will have the right under Paragraph 19 below to demand that I make immediate payment in full of the amount that I owe to Lender under the Note and this Security Instrument.

## 11. OBLIGATIONS OF BORROWER AND OF PERSONS TAKING OVER BORROWER'S RIGHTS OR OBLIGATIONS

Any person who takes over my right or obligations under this Security Instrument will have all of my rights and will be obligated to keep all of my promises and agreements made in this Security Instrument. Similarly, any person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's agreements made in this Security Instrument.

If more than one person signs this Security Instrument as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Security Instrument. Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together. This means that any one of us may be required to pay all sums secured. However, if one of us does not sign the  Note: (A) that person is signing this Security Instrument only to give that person's rights in the Property to Lender under the terms of this Security Instrument, and (B) that person is not personally obligated to pay the sums secured; and (C) that person agrees that Lender may agree with the other Borrowers to delay enforcing any of Lender's rights or so modify or make any accommodations with regard to the terms of this Security Instrument or the Note without that person's consent.

7 of 16

## 12. LOAN CHARGES

If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed permitted limits: (A) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (B) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

## 13. LEGISLATION AFFECTING LENDER'S RIGHTS

If a change in applicable law would make any provision of the Note or this Security Instrument unenforceable, Lender may require immediate payment in full of all sums secured by this Security Instrument as that phrase is defined in Paragraph 19 below.  If Lender requires immediate payment in full under this Paragraph 13, Lender will take the steps and may act as specified in Paragraph 19 below.

## 14. NOTICES REQUIRED UNDER THIS SECURITY INSTRUMENT

Any notice that must be given to me under this Security Instrument will he given by delivering it or by mailing it by first class mail unless applicable law requires use of another method.  The notice will be addressed to me at the address stated in the section above titled "Description of the Property." A notice will be given to me at a different address if I give Lender a written notice of my different address. Any notice that must be given to Lender under this Security Instrument will be given by mailing it to Lender's address stated in paragraph (C) of the section above titled "Words Used Often In This Document." A notice will be mailed to Lender at a different address if Lender gives me a notice of the different address. A notice required by this Security Instrument is given when it is mailed or when it is delivered according to the requirements of this Paragraph 14 or of applicable law.

## 15. LAW THAT GOVERNS THIS SECURITY INSTRUMENT

This Security Instrument is governed by Federal law and the laws of the jurisdiction where the property is located.

The borrower  hereby consents and agrees that the debt hereby secured, or any part thereof, may be renewed or extended beyond maturity as often as may be desired by agreement between the creditor and any subsequent owner of the property, and no such renewal or extension shall in any way affect the borrower's responsibility, whether as surety or otherwise.  The borrower and any other party assuming liability hereunder hereby consent and agree that if the property conveyed hereby or a substantial portion thereof is transferred to any subsequent owner, and the creditor exercises the right to accelerate the debts secured hereby, the creditor may accept any delinquent payments or other cure of default giving rise to such acceleration from the then owner of the property or any other person and reinstate the indebtedness in accordance with the schedule of maturity as of the time of acceleration or upon such new schedule as may be agreed if renewal or extension are otherwise permitted and no such reinstatement shall in any way affect the liability of such prior parties, whether as surety or otherwise. If any term of this Security Instrument or of the Note conflicts with the law, all other terms of this Security Instrument and of the Note will still remain in effect if they can be given effect without the conflicting term. This means that any terms of this Security Instrument and of the Note which conflicts with the law can be separated from the remaining terms, and the remaining terms will still be enforced. The borrower hereby waives its right to a jury trial.

## 16. BORROWER'S COPY

I will be given one conformed copy of the Note and of this Security Instrument and hereby acknowledge receipt thereof.



50460069
Page: 9 of 16
05/17/2002 02:26P

**17. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

If all or any part of the Property or an interest therein is sold or transferred by Borrower (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person or persons but is a corporation, partnership, trust or other legal entity) without Lender's prior written consent, excluding (A) the creation of a lien or encumbrance subordinate to this Security Instrument which does not relate to a transfer of rights of occupancy in the property; (B) the creation of a purchase money security interest for household appliances; (C) a transfer by devise, descent or by operation of law upon the death of a joint tenant; or (D) the grant of any leasehold interest of three years or less not containing an option to purchase, Lender may, at Lender's option, declare all the sums secured by this Security Instrument to be immediately due and payable.

If Lender exercises such option to accelerate, Lender shall mail Borrower notice of acceleration in accordance with Paragraph 14 hereof, and Lender may, in accordance with Pennsylvania law, invoke any remedies permitted by this Security Instrument.

Lender may consent to a sale or transfer if (1) Borrower causes to be submitted to Lender information required by Lender to evaluate the transferee as if a new loan were being made to the transferee; (2) Lender reasonably determines that Lender's security will not be impaired and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable (3) interest will be payable on the sums secured by this Security Instrument at a rate acceptable to Lender; (4) changes in the terms of the Note and this Security Instrument required by Lender are made, including, for example, periodic adjustment in the interest rate, a different final payment date for the loan, and addition of unpaid interest to principal; and (5) the transferee signs an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument, as modified if required by Lender. To the extent permitted by applicable laws, Lender also may charge a reasonable fee as a condition to Lender's consent to any sale or transfer.

Borrowers will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

**18. BORROWER'S WARRANTIES REGARDING FORFEITURE**

Borrower states that he will not use, and will not permit any third party to use the Property or any portion thereof or interest therein for any purpose that would cause the property to be subject to forfeiture. Borrower further states that the Property has not been acquired with the proceeds from any transaction or activity that would thereby cause the property to be subject to forfeiture.

**19. LENDER'S RIGHT TO REQUIRE IMMEDIATE PAYMENT IN FULL**

If I fail to keep any promises or agreements made in the Note or in this Security Instrument, including the promises to pay when due the amounts I owe to Lender, I will be in default. If this occurs, the Lender may require that I pay immediately the entire amount then remaining unpaid under the Note and under this Security Instrument. Lender may do this without making any further demand for payment. This requirement will be called "Immediate Payment in Full." If I am in default for any reason, you have the right to demand payment of the entire amount I owe you. If Lender requires payment in full or in the event of a foreclosure action, I agree to pay reasonable and permissible legal fees, costs and disbursements, and that such total amount shall be paid by me with interest, as specified in paragraph 25, up to the day you actually receive such payment, even after foreclosure occurs.

In any lawsuit for sale. Lender will have the right to (i) collect all costs allowed by law; (ii) have the Property sold as one parcel; and (iii) have a Receiver appointed by the Court without first giving notice to me and without regard to the value of the Property.

Upon acceleration, Borrower shall have no right to reinstate.   All rights and remedies provided in this Security Instrument are distinct and cumulative to any other right or remedy under this Security Instrument or afforded by law or equity, and may be exercised concurrently, independently or successively.

50460069
Page: 10 of 16
05/17/2002 02:26P

10 of 16

## 20. LENDER'S RIGHTS TO RENTAL PAYMENTS AND TO TAKE POSSESSION OF THE PROPERTY

If Lender requires Immediate Payment in Full, or if I abandon the Property, then Lender, persons authorized by Lender, or a receiver appointed by a court at Lender's request may; (A) collect the rental payments, including overdue rental payments. directly from the tenants: (B) enter on and take possession of the Property; (C) manage the Property; and (D) sign, cancel and change leases. If Lender notifies the tenants, Lender has the right to collect rental payments to Lender without having to ask whether I failed to keep any promises and agreements under this Security Instrument. If there is a judgment for Lender in a lawsuit for foreclosure and sale, I will pay to Lender reasonable rent from the date the judgment is entered for as long as I occupy the Property. However, this does not give me the right to occupy the Property.

All rental payments collected by Lender or by a receiver, other than the rent paid by me under this Paragraph 20, will be used first to pay the costs of collecting rental payments and/or managing the Property. If any part of the rental payments remains after those costs have been paid in full, the remaining part will be used to reduce the amount that I owe to Lender under the Note and under this Security Instrument. The costs of managing the Property may include the receiver's fees, reasonable attorney's fees, and the cost of any necessary bonds. Lender and the receiver will be obligated to account only for those rental payments that they actually receive.

If I fail to make any payments or keep promises under this Security Instrument or the Note, then I shall pay monthly in advance to you or to any receiver a fair charge for the use of the Property that I occupy. If I do not pay this fair charge, you or the receiver may sue to collect it or to remove me, or both. I will not collect more than one (1) month's rent in advance from any tenant or occupant without your written consent.

## 21. LENDER'S OBLIGATION TO DISCHARGE THIS SECURITY INSTRUMENT

When Lender has been paid all amounts due under the Note and under this Security Instrument the Lender will release this Security Instrument and deliver a certificate stating this Security Instrument has been paid in full. Lender will then deliver a certificate stating that this Security Instrument has been satisfied. I will pay all costs of recording the Release in the proper official records.

## 22. ADDITIONAL CHARGES

I agree to pay all reasonable charges in connection with the servicing of this loan, including but not limited to obtaining tax searches and bills and in processing insurance loss payments, ownership transfers, releases, easements, consents, extensions, modifications, special agreements, assignments, reduction certificates, asset recovery and satisfaction of mortgage.

In the event Borrower directs Lender to order any reports, appraisals, searches, examinations and/or the like, I agree that the expense for the same is to be added to the balance of the existing mortgage, if same is not paid within 30 days of written notification.

## 23. HAZARDOUS SUBSTANCES

Borrower shall not create or suffer to exist, or permit any of its agents, employees, contractors, tenants, or invitees to create or suffer to exist any lien, security interest charge or encumbrance against the Property or any portion thereof, relating to any physical or environmental condition, including, but not limited to, any lien imposed pursuant to section 107(f) of the Superfund Amendments and Reauthorization Act of 1986 (42 U.S.C. 9607(l)) or any similar federal, state, or local statute, regulation, rule, order, or ordinance.

Borrower shall not cause or permit any other party to cause or permit the presence, use, disposal, storage or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any environmental law.



50460069
Page: 11 of 16
05/17/2002 02:26P

11 of 16

Borrower shall promptly give the Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or environmental law, of which the Borrower has actual knowledge or should have actual knowledge. If Borrower learns or is notified by any governmental or regulatory authority that any removal or remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take necessary remedial, removal, and other actions necessary to clean up and remove all Hazardous Substances, solid wastes, or contaminants on, in, from, or affecting the property or any portion thereof, in accordance with environmental law, to the satisfaction of the lender and in accordance with all orders and directives of governmental authorities having jurisdiction over the Property and/or such substances or materials. If Borrower fails to take remedial action, and upon receipt of notice from any party asserting the existence of any Hazardous Substances affecting the property that if true may result in an order, suit, imposition of a lien on the property, or other action, or if the lender in good faith believes would jeopardize its security interest, the Lender at its option shall take whatever action is necessary in accordance with environmental law, to clean up, remove, resolve or otherwise remediate the situation. All reasonable costs and expenses paid or incurred by Lender in the exercise of such rights shall be secured by the liens securing this loan and shall be payable by borrower upon demand by Lender.

Borrower shall indemnify, exonerate, defend and hold harmless Lender, its officers, directors, shareholders, agents, and employees, from and against any and all claims, demands, obligations, penalties, fines, suits, liabilities, settlements, damages, losses, costs, and expenses (including but not limited to, attorney and consultant fees and expenses, investigation fees, laboratory expenses, cleanup costs, court costs, and other expenses of litigation or arbitration), as well as any such fees and expenses incurred in enforcing this indemnity, and any violation of any applicable environmental laws in effect on or before the date hereof or hereafter made effective.

As used in this document, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law, and the following substances: gasoline, kerosene, other flammable or toxic petroleum products or by-products, toxic pesticides, herbicides and fungicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this document, "Environmental Law" means federal, state, and local laws, statutes, rules, regulations, judicial orders and decisions that relate to health, safety or environmental protection and maintenance in the jurisdiction where the property is located.

### 24. MISCELLANEOUS PROVISIONS

(A) In the event that the holder of this Security Instrument be required to retain legal counsel for the purpose of commencing foreclosure proceedings hereunder, a reasonable sum shall be added to the said indebtedness, as fair and reasonable legal fees and deemed secured hereby in addition to expenses, costs, allowances as provided by law.

(B) If this Security Instrument involves a condominium unit, any failure to pay common charges when they become due shall be considered a default under the terms of this Security Instrument.

(C) If I am permitted to cure a default of this Note or the Mortgage securing this Note pursuant to the United States Bankruptcy Code (Title 11 U.S.C.) or other applicable law, I specifically agree that the amount necessary to cure the default shall include the sum of all amounts past due under the terms of the Note and/or Mortgage, including all principal, interest, and late charges, and all amounts advanced by Lender pursuant to the terms of the Note and/or Mortgage, including all attorneys fees and interest rate required by the Note and/or Mortgage from the date on which I elect to cure the default to the date on which the default is fully cured.

Nothing herein shall be construed to allow me any right to cure any default of the Note or Mortgage except as specifically authorized under the United States Bankruptcy Code (Title 11 U.S.C.) or other applicable law.

50460069
Page: 12 of 16
05/17/2002 02:26P



12 of 16

(D) In the event that Lender shall advance any money in order to pay Borrower's insurance, taxes and/or hazard insurance and/or any other judgments, liens, violations, or actions under paragraph 23, then Borrower will pay interest on the sums advanced at the rate specified in Borrower's Note.

(E) In the event the premises suffers damage or Borrower's statements and/or representations have been found to be false prior to the disbursement of funds, Lender, in its sole discretion, may cancel this Note and Lender shall have no further obligations to the Borrower. Lender agrees that Lender will file a Satisfaction of Mortgage in the county this Security Instrument is filed with the Office of the County Clerk prior to cancellation by Lender.

(F) In the event that any check paid by Borrower to Lender is returned unpaid then and in that event Lender may, at Lender's option, require bank or certified funds for each payment made thereafter.

(G) In the event the Borrower(s) herein cause or bring any action, proceeding or petition for the assignment, liquidation or rearrangement of their total indebtedness under any federal, state or local statute, and in such event there is an improper impairment of the lien of this Security Instrument within the meaning of any Title, Code or local statute therein relevant, there shall be allowed, awarded and granted to the holder of this Security Instrument by the court or tribunal having jurisdiction thereof, reasonable legal fees incurred to protect the lien of this Security Instrument against such improper impairment, or in the event the holder of this Security Instrument is required to bring on any motion or proceeding to vacate any stay or compel rejection of any proposed plan. Such award of reasonable counsel fees shall be based upon the reasonable hourly billing rate of an experienced real estate/bankruptcy practitioner within the jurisdiction of the court or tribunal, and without any reference or regard direct or indirect to the now disused theory of "economy of administration."

(H) In addition, Lender shall be entitled to charge interest on all accrued interest, foreclosure costs, attorney fees whether incurred as a result of the foreclosure or the bankruptcy proceeding, or other pre-petition arrearage payable pursuant to or through any plan in the bankruptcy proceeding. The interest rate shall be the same rate charged under the Note secured by this Security Instrument.

## 25. ACCELERATION; DEFAULT; REMEDIES

In the event of a default by Borrower, in any of its covenants and agreements hereunder or in the event of a breach of any of Borrower's representations and warranties herein, Lender, at its option, may require immediate payment in full of all sums secured by this Security Instrument without further demand or notice to Borrower and may invoke any remedy permitted by applicable law.

If the lender requires payment in full, or in the event of a foreclosure action, I agree to pay reasonable legal fees, principal and interest, costs and disbursements, allowances and additional allowances as may be awarded by any judgment of foreclosure and sale added thereto. After acceleration and until a judgment has been entered, I shall pay this total amount with interest, up to the day you actually receive such payment, at the following interest rate:   a)   16%   if this is a mortgage in excess of $50,000.00; or b) the Note rate if this is a mortgage bearing an original prinicpal amount between $5,000.00 and $50,000.00. After a judgment has been rendered, the interest rate will be the highest permitted by the state of Pennsylvania.

In addition, Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 25, including, but not limited to, reasonable attorney's fees, and costs of title evidence. Upon acceleration, Borrower shall have no right to reinstate. All rights and remedies provided in this Security Instrument are distinct and cumulative to any other right or remedy under this Security Instrument or afforded by law or equity, and may be exercised concurrently, independently or successively.



50460069
Page: 13 of 16
05/17/2002 02:26P

13 of 16

**BORROWER'S COMPLIANCE**

**a)** Upon the request of the Lender, its successors or assigns, I shall:

1) furnish and execute any documents required by the Lender to verify the truth and accuracy of any information provided by me in connection with my mortgage loan, including, but not limited to, income, employment, deposit and loan authorizations and verifications, income tax returns, and contracts and settlement statements for the sale of other properties;

2) execute any document that should have been signed at or before the closing; re-execute any document signed at or before the closing; and execute that which was incorrectly drafted and signed at the closing, including but not limited to, correction notes, correction mortgages and other correction instruments;

3) furnish any documents required by, and comply with any conditions, work and/or certificates set forth in Lender's appraisal report or firm commitment;

4) execute any additional documentation and provide any additional information required by the Lender to facilitate the sale of the mortgage into the secondary mortgage market.

**b)** I represent and agree that all request by Lender will receive the full cooperation of and compliance by me within five days of the making of the requests, and the obligations hereunder shall survive the closing.

**c)** It is further agreed that my failure to comply with the representations and agreements hereunder shall constitute a default under the note and mortgage executed in connection with this agreement, and shall entitle the Lender, its successors or assigns to any and all of the remedies available upon default under the note and/or mortgage, including collection of default interest, attorney's fees, costs and disbursements.

**26. RIDERS TO THIS SECURITY INSTRUMENT**

If one or more riders are executed by Borrower and recorded together with this Security Instrument, the promises and agreements of each are incorporated as a part of this Security Instrument. [Check applicable box(es)]

____Adjustable Rate Rider                ____Biweekly Payment Rider
____Condominium Rider                    ____Graduated Payment Rider
____1-4 Family Rider                     ____Planned Unit Development Rider
____Rate Improvement Rider               ____Second Home Rider
____V.A. Rider                           ____Other_____

**BY SIGNING BELOW**, Borrowers accept and agree to the  promises and agreements contained in this Security Instrument and in any rider(s) signed by me and recorded with it.

_____
ANTHONY LYNCH

_____

_____

_____

50460069
Page: 14 of 16
05/17/2002 02:26P

14 of 16

STATE OF PENNSYLVANIA, _____*Philadelphia*_____ County ss:

On this 9th   day of   May   ,   2002   before me, the undersigned, a Notary Public in and for said County, personally appeared
ANTHONY LYNCH

and acknowledged the execution of the foregoing instrument.

WITNESS my hand and official seal.

My Commission Expires:

_____
Notary Public

NOTARIAL SEAL
WALTER ACKAH, Notary Public
East Whiteland Twp., Chester County
My Commission Expires Dec. 4, 2004

50460069
Page: 15 of 16
05/17/2002 02:26P

15 of 16

Doc #20521 - PAMT13

The attached Mortgage covers real property principally improved by a one to four family dwelling.

**Premises commonly known as:**

2710 NORTH 23RD STREET, Philadelphia, PA   19132

District _____ Section _____ Block _____ Lot _____

ANTHONY LYNCH

50460069
Page: 16 of 16
05/17/2002 02:26P

16 of 16

Doc #20095 - PROP1